IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Reza Box,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>Keisha Turner, *et al.*<br><br>　　　　　Defendants. | Case No.: 22-cv-50272<br><br>Judge Iain D. Johnston |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Reza Box alleges that medical providers at the Winnebago County Jail were deliberately indifferent to his eye pain. For the reasons explained below, the Defendants' Motion for Summary Judgment is granted.

**I.　Background**

Except where noted, the following facts are undisputed. While incarcerated at the Winnebago County Jail, Plaintiff Reza Box wrote to the Jail's medical providers about his moderate eye pain.[1] Dkt. 75, ¶ 33. As Box's self-report explains, he previously suffered from cataracts and retinal detachment. *Id.* And though he hadn't experienced any symptoms since being incarcerated, Box asked to have his eyes examined because they "hurt a little bit" in early July 2020. *Id.*

Box met with registered nurse, Defendant Caitlyn Porter, the next day. *Id.* at ¶ 34. Though the Parties debate several statements made (or not made) at Box's first

---

[1] Box's report, in its entirety, says: "Not having any symptoms just wanna get my eyes looked at it hurt a little bit I had surgery on my left eye before for cataracts an [sic] retinal detachment." Dkt. 75 at ¶ 33.

1

appointment,[2] they agree that Box wasn't grimacing or crying. *Id.* at ¶ 34. In fact, Nurse Porter noted that Box wasn't showing any physical symptoms or signs of pain. *Id.* at ¶ 14. So, rather than treat Box personally, Nurse Porter scheduled a follow-up appointment. *Id.* at ¶ 15.

Two days later, Box was screened by the Jail's medical technician, Defendant Edna Luna. *Id.* at ¶ 16. Although inmates can purchase medication through the commissary, the Jail forbids Luna from offering any medication herself. She simply recorded Box's vitals and gathered background information. *Id.* at ¶¶ 16–17. Then, nurse practitioner, Defendant Kisha Turner, conducted an examination. *Id.* at ¶ 18. Nurse Turner concluded that Box's eyelid was puffy, but, like Nurse Porter, she saw no visible symptoms and no signs of pain. *Id.* at ¶¶ 18–20. She promised to schedule a third appointment because Box reported that his pain "increased a little bit" since his first appointment. *Id.* at ¶¶ 20, 22. But ten days passed, with no word from Box or any medical provider. *Id.* at ¶ 24.

Then, in mid-July, Box wrote an urgent medical request, rating his pain as an 8/10 and asking to be seen immediately. *Id.* at ¶ 25. The Jail arranged an early morning appointment two hours later. *Id.* at ¶ 26. By the time he reached the medical provider, Box's left eye was swollen shut, his iris was milky white, and his pain had increased to a 10/10. *Id.* at ¶ 59; Dkt. 80-1, 1. The attending nurse

---

[2] Box claims that he rated his pain as a 2/10, which hurt worse to the touch. Nurse Turner's understanding is that Box's pain was a 2/10 only when he rubbed his eye. The Parties also dispute whether Nurse Turner offered Tylenol to Box. But, as explained below, these issues are immaterial. Even if the Court resolves all factual questions in the light most favorable to Box, he still falls short of the summary judgment standard.

immediately gave Box Tylenol and transferred him to the emergency room. *Id.* at ¶ 59. According to Box, this was the first time any medical provider offered him pain medication for his eye. *Id.* at ¶ 14, 20.

The emergency room doctors diagnosed Box with a corneal ulcer and retinal detachment. *Id.* at ¶ 5. He had a successful emergency surgery and two follow-up appointments at UW Madison, as well as one specialist appointment at Miller Eye Center. *Id.* at ¶¶ 61–62. The specialist explained that, although retinal detachment's onset sensation typically comes in weeks, Box didn't notice it sooner "due to [his] low sensitivity." *Id.* at ¶ 61. Importantly, the specialist noted that Box's symptoms started the night before he went to the emergency room—not in the weeks prior. *Id.*

On these allegations, Box claims that Luna, Turner, and Porter were deliberately indifferent to his serious medical needs, both before and after his operation. Before the surgery, Box argues that the Defendants should have offered him over-the-counter pain medication and referred him to see specialists more quickly. After the operation, he argues that the Jail's medical providers didn't administer his prescription eye drops as directed by the doctors. The Defendants move for summary judgment on all counts, arguing that they weren't personally involved in his post-operative care and that they lacked actual knowledge of his injuries before the surgery.

## II. Analysis

On summary judgment, the movant has the burden of showing that "no genuine dispute as to any material fact" exists and that it is "entitled to judgment as

3

a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that might affect the outcome of the suit. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). No "genuine" dispute exists if a court would be required to grant a Rule 50 motion at trial. *Id.* at 250–51. The Court must construe the "evidence and all reasonable inferences in favor of the party against whom the motion under consideration is made." *Rickher v. Home Depot, Inc.*, 535 F.3d 661, 664 (7th Cir. 2008). "Summary judgment is only warranted if, after doing so, [the Court] determine[s] that no jury could reasonably find in the nonmoving party's favor." *Blasius v. Angel Auto, Inc.*, 839 F.3d 639, 644 (7th Cir. 2016).

   i.  Pre-operative care

Because Box was a pretrial detainee at the Winnebago County Jail, his claims of constitutionally inadequate medical care arise under the Fourteenth Amendment. *See Miranda v. County of Lake*, 900 F.3d 335, 352 (7th Cir. 2018). To prevail under the Fourteenth Amendment, an inmate must show (1) the defendant knew or strongly suspected that their actions would be harmful; and (2) the defendant's conduct was objectively unreasonable under the circumstances. *Mays v. Dart*, 974 F.3d 810, 820 (7th Cir. 2020); *Pittman v. City of Madison*, 970 F.3d 823, 828 (7th Cir. 2020).

Initially, no Defendant suspected that deferring Box's treatment would be harmful. Box's initial care request simply sought monitoring and management of a longstanding condition. At his appointments in early July, Box didn't exhibit any signs of pain or distress; his eyelid looked puffy but otherwise normal. He reported manageable pain and no symptoms. So, even if none of the Defendants offered Box

4

Tylenol, that decision wasn't objectively unreasonable. Some discomfort was perfectly consistent with his history of chronic eye conditions, and Box could purchase over-the-counter medication for himself at the commissary.

Likewise, Luna, Turner, and Porter would still be entitled to summary judgment if they carelessly failed to discover Box's injuries. As the Defendants note, the Fourteenth Amendment's "objectively unreasonable" standard is far more demanding than ordinary, or even gross, negligence. *Matos ex rel. Matos v. O'Sullivan*, 335 F.3d 553, 557 (7th Cir. 2003); *Rodgers v. Rankin*, 99 F.4th 415, 415 (7th Cir. 2024). Nothing in the record suggests the providers purposefully, knowingly, or recklessly inflicted Box's injuries. When he suddenly developed symptoms, Jail employees scheduled an appointment in the early morning hours, provided pain medication, sent Box to the emergency room, promptly accommodated an operation, and arranged three further appointments.

ii. Post-operative care

Although Box argues that he didn't receive eyedrops as directed after his surgery, the record fails to support any claims against the named Defendants. Liability under 28 U.S.C. § 1983 must be premised on personal involvement. *Morfin v. City of East Chicago*, 349 F.3d 989, 1001 (7th Cir. 2003). Box hasn't shown that Luna, Turner, or Porter were personally responsible for administering his medication, or even that they knowingly turned a blind eye to inadequate post-operative care. No reasonable jury could hold Luna, Turner, or Porter liable for the

5

actions of several unnamed "medical providers," so the Court grants summary judgment on these claims, too

### III. Conclusion

For the reasons explained above, the Defendants Motion for Summary Judgment [70] is granted.

Entered: January 2, 2025       By:_____
                     Iain D. Johnston
                     U.S. District Judge